STATE OF MICHIGAN
IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

INVESTMENT REALTY SERVICES, LLC,
ET AL

|                  | Plaintiffs, | File No:  19-10198 |
|------------------|-------------|--------------------|
| v.               |             | Hon. SEAN F. COX   |

CITY OF GARDEN CITY

Defendant.

_____/

Law Offices of Aaron D. Cox, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664
aaron@aaroncoxlaw.com

Mark K. Wasvary, PC
Mark K. Wasvary (P51575)
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
248-649-5667
markwasvary@hotmail.com

Rosati Schultz Joppich & Amtsbuechler, PC
Matthew J. Zalewski (P72207)
Anne McClorey McLaughlin (P40455)
Attorneys for Defendants
27555 Executive Drive, Suite 250
Farmington Hills, MI 48331-3550
248-489-4100
mzalewski@rsjalaw.com
amclaughlin@rsjalaw.com

_____/

## PLAINTIFFS' FIRST AMENDED CLASS-ACTION COMPLAINT

NOW COMES INVESTMENT REALTY SERVICES, LLC and

SAFEVEST OAKLAND ACQUISITIONS, LLC, on behalf of all others similarly

situated, by and through the undersigned attorneys from THE LAW OFFICES OF

AARON D. COX, PLLC and MARK K. WASVARY, PC, and states for this First-

Amended Class-Action Complaint as follows:

## INTRODUCTION

1. Plaintiffs challenge the City of Garden City's (the "City") policy, practice, and custom of imposing unlawful grass cutting and yard maintenance fees to Plaintiffs who own real property in the City.

2. Plaintiffs also challenge the City's policy, practice, and custom of collecting registration and inspection fees under their scheme of performing warrantless searches.

3. Plaintiffs, and those similarly situated, are current and former owners of real property in the City.

4. The State of Michigan under the Home Rule City Act (MCL 117.1 et seq.) permits municipal corporations like Garden City to adopt certain laws, codes, or rules for building regulations.

5. MCL 117.3 (K) specifically addresses the adoption of certain building codes:

Except as otherwise provided under the Stille-DeRossett-Hale single state construction code act, 1972 PA 230, MCL 125.1501 to 125.1531, a city may adopt a law, code, or rule that has been promulgated and adopted by an authorized agency of this state pertaining to fire, fire hazards, fire prevention, or fire waste, and a fire prevention code, plumbing code, heating code, electrical code, building code, refrigeration machinery code, piping code, boiler code, boiler operation code, elevator machinery code, an international property maintenance code, or a code pertaining to flammable liquids and gases or hazardous chemicals, that has been promulgated or adopted by this state, by a department, board, or other agency of this state, or by an organization or association that is organized and conducted for the purpose of developing the code, by reference to the law, code, or rule in an adopting ordinance and without publishing the law, code, or rule in full. The law, code, or rule shall be clearly identified in the ordinance and its purpose shall be published with the adopting ordinance. Printed copies of the law, code, or rule shall be kept in the office of the city clerk, available for inspection by, and distribution to, the public at all times. The publication shall contain a notice stating that a complete copy of the law, code, or rule is made available to the public at the office of the city clerk in compliance with state law requiring that records of public bodies be made available to the general public.

6. Pursuant to the Home Rule City Act the City has adopted the International Property Maintenance Code ("IPMC") in Section 151.01 of the City's codes and ordinances. The IPMC, in turn, governs the maintenance of existing structures in the City.

7.  The City's adoption of the IPMC coincides with their ordinances governing the registration and occupancy of non-owner occupied rental property in the City. See §153.01 et seq. of the City's Codes (the "Rental Ordinance").

8.  One section of the IPMC that the City amended relates to the City's handling of weeds. Of specific importance to this lawsuit is §151.01 (3) (f) of the City's Property Maintenance Code modifying IPMC 302.4, which reads as follows:

> All premises and exterior property shall be maintained free from weeds or plant growth in excess of eight inches. All noxious weeds shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, leaves, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens.
>
> Upon failure of the owner or agent having charge of a property to cut and destroy weeds **after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3** and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the costs of such removal shall be paid by the owner or agent responsible for the property.

(the "Weeds Ordinance") (emphasis added).

9.  The City has also adopted a companion ordinance to the Weeds Ordinance that expands the City's authority from not only removing grass and weeds,

but also charging owners for the costs of such removal. Section 92.16 of the City's Codes permits the City to enter onto an owner's land and abate a nuisance, but only after providing notice by personal service, registered mail or posting on the subject property. §92.16 permits the City to abate the nuisance by hiring an outside vendor. §92.16 permits the City to place the "cost of cutting" the grass on the owner's tax rolls.

(the "Nuisance Ordinance")

### a. The Weeds and Nuisance Ordinance

10. Collectively the City utilizes the Weeds Ordinance and the Nuisance Ordinance to charge owners of real property for not only the costs of cutting lots alleged to be in violation of the Weeds or Nuisance Ordinance, but also an amount between 8-16 times the costs of cutting (collectively the "Grass Fees").

11. The City issues these Grass Fees to homeowners in the form of an invoice.

12. The City's Grass Fees are charged administratively and not without City council's individualized review of the actual costs expended in abating the nuisance.

13. There is no administrative or judicial hearing to determine the propriety of the City's actions in abating an alleged nuisance.

14. There is no administrative or judicial hearing to determine the propriety of the City's Grass Fees.

15. There is likewise no post-deprivation due process afforded to Plaintiffs, or any other, to challenge the propriety or adequacy of the Grass Fees.

16. In the event that an owner fails or refuses to pay the Grass Fees they are placed on the owner's tax rolls as a "nuisance" line item.

17. If an owner attempts to sell a property with unpaid Grass Fees the title companies require that these fees be withheld from sale proceeds and paid to the City in order to close the transaction.

18. There is likewise no mechanism for appeal or court review of these Grass Fees as they are not a final administrative order appealable under the Michigan Constitution.

19. The Grass Fees impose upon the owners of these properties a disproportional financial burden of a governmental entity – enforcement of the City's ordinances – which benefits the community at large.

20. The Grass Fees in this case are not charged in reasonable proportion for any service rendered to and owner or any benefit conferred. Instead, the Grass Fees are charged as a further punishment to owners – without any hearing on such Grass Fees – for the City's mere enforcement of its ordinances.

21. The City has issued in excess of 2065 invoices (the "Invoices") for Grass Fees to owners of real property in the City since January of 2013. These invoices were charges by the City for grass cutting and other nuisance abatement under the Weeds Ordinance and/or the Nuisance Ordinance.

22. The Invoices generally range from $200.00 to more than a thousand dollars for each invoice.

23. The City did not perform any of the nuisance abatement referenced in the Invoices by its own staff, departments, or employees. Instead, the City has hired various third parties ("Vendors") to perform the Invoice's referenced abatements.

24. The City's Invoices do not reflect the actual costs of performing the referenced abatements charged to the City by Vendors.

25. The City's Invoices almost without exception charge an amount that is between eight-to-sixteen times greater than the amount the City paid to Vendors. As an example, Plaintiff Investment Realty Services, LLC was charged $400 for an alleged violation of the nuisance ordinance; the corresponding fee charged by the Vendors for a grass cut of a normal lot in Garden City is a mere $25.00.

26. The Invoices are not served in accordance with the City's own code and owners often receive no notice of alleged violations.

27. The Invoices are likewise not served in accordance with the IPMC.

28. There is no rational relationship between the City's Invoices and the actual expenses incurred by the City in paying Vendors to abate the alleged nuisances.

29. The City's Grass Fees are demands for payment and the consequence of failure to pay is a lien in the form of an additional tax obligation to the homeowner, which if not paid would result in the foreclosure of the homeowner's property under the Michigan General Property Tax Act. Any payment of the Grass Fees by any person is also involuntary for this reason. See §92.16.

30. Moreover, the City's Invoices are prohibited by MCL 141.91 where the City's own penalty provision limits the violation to $25.00. See §92.99.

31. The doctrine of ultra vires further precludes a city from engaging in a course of conduct where it lacks the authority to do so by Constitution, Statute, or other law. The City has no lawful authority to charge the amounts in the Invoices.

32. All owners subject to the conduct of the City pay the charges involuntarily as the Defendant collects funds under the threat of lien for which the property would be subject to forfeiture for failure to pay.

33. Plaintiff, Investment Realty Services, LLC received an invoice from the City

for Grass Fees under the Weed Ordinance and/or the Nuisance Ordinance on May 23, 2017 for its property commonly known as 31625 Balmoral, Garden City, MI.

34. Plaintiff denied liability under the invoice and refused to pay same. However, when Plaintiff went to sell the property it was forced to pay the Grass Fees in order to consummate the sale.

### b. The Rental Ordinance

35. Plaintiffs incorporate the preceding paragraphs.

36. The City's Rental Ordinance requires that all owners of rental dwellings register each rental dwelling.

37. The Rental Ordinance specifically requires an inspection by the Building Department prior to the issuance of a registration certificate.

38. An owner who rents a property without a rental certificate is pursued criminally by the City despite their own ordinance identifying violations as civil infractions.

39. Any fees or charges assessed for alleged violations of the Rental Ordinance become liens on the real property.

40. The City's Rental Ordinance mandates warrantless searches. Specifically §153.04 states as follows:

> The owner of the dwelling identified in the application **shall make the dwelling available for inspections by the**

**department** as may be necessary for the department to determine whether the dwelling complies with the International Property Maintenance Code…

(emphasis added)

41. The IPMC likewise mandates warrantless searches. See Section 104.3 of the IPMC.

42. Neither the Rental Ordinance nor the IPMC sets forth how frequent an inspection can be forced upon an owner; nor to what limitations, if any, these warrantless searches have.

43. Neither the Rental Ordinance nor the IPMC requires that the City notify an owner of their right to object to a warrantless search.

44. Neither the Rental Ordinance nor the IPMC otherwise affords any pre-compliance review procedures nor procedural guidelines for obtaining an administrative search warrant.

45. If a rental inspection is refused for any reason, it ultimately results in punishment which can include being charged with a crime and potential imprisonment.

46. An owner of a rental dwelling who fails to permit these warrantless searches is denied their lawful right to rent their property.

47. Defendant has impeded and threatens to further unconstitutionally impede Plaintiff Safevest Oakland Acquisition, LLC ("Safevest") in their right to be

free from unlimited warrantless searches without probable cause by maintaining, implementing, and enforcing a policy and custom that (i) threatens Plaintiff and others with unduly broad warrantless searches of their homes without probable cause; (ii) violates Plaintiff's reasonable expectation of privacy; and (iii) retaliates against Plaintiff for exercising their Fourth Amendment rights by either (a) pressing charges against them, or (b) depriving them of their property rights, including but not limited to their right to earn an income through the rental of their home.

48. On or about September 5, 2018 Safevest submitted a rental registration to the City of Garden City for the real property commonly known as 5918 Cardwell, Garden City, MI.

49. In accordance with the City's Rental Ordinance Safevest was forced to pay $200.00 on or about September 5, 2018 and submit their property to an inspection under Defendant's unconstitutional warrantless inspection ordinance.

50. On or about October 15, 2018 the City entered Safevest's property at 5918 Cardwell under their unconstitutional inspection ordinance and conducted an inspection of the entire interior and exterior of the property.

## I.    PARTIES

51. Plaintiff INVESTMENT REALTY SERVICES, LLC ("IRS") is a Michigan

Limited Liability Company who owned the property commonly known as 31625 Balmoral St., Garden City, MI.

52. Plaintiff SAFEVEST OAKLAND ACQUISITION, LLC ("Safevest") is a Delaware Limited Liability Company authorized to do business in the State of Michigan and is the current owner of 5918 Cardwell, Garden City, MI.

53. Plaintiffs bring this class action on behalf of themselves and all others who are similarly situated by virtue of having been charged unlawful Fees by the City of Garden City.

54. Plaintiffs bring this class action on behalf of themselves and all others who are similarly situated by virtue of having paid fees pursuant to the City of Garden City's unconstitutional inspection scheme.

55. Defendant City of Garden City is a municipal corporation located within Wayne County in the State of Michigan.

## II.   JURISDICTION AND VENUE

56. Plaintiff incorporates the preceding paragraphs.

57. Jurisdiction by this Court over Plaintiff's constitutional claims is proper pursuant to 28 USC § 1343 and 28 USC § 1331.

58. Supplemental jurisdiction over all state law claims is proper pursuant to 28 USC § 1367.

59. Venue is proper in this District pursuant to 28 USC § 1391 because the

District is where the Defendants reside, where a substantial part of the events and omissions giving rise to Plaintiff's claims occurred, and where a substantial part of all properties subject to the action are located.

60. As additional Class Plaintiffs are identified, this District will remain the most convenient venue in which all future cases can be considered and consolidated as necessary.

### III.   CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF DUE PROCESS

61. Plaintiff incorporates the preceding paragraphs.

62. It is unconstitutional to deprive a person of their property without due process of law as required by the United States Constitution.

63. Plaintiff IRS has a constitutionally recognized property right in its money.

64. The City's Weed Ordinance and Nuisance Ordinance unlawfully deprive Plaintiff of its property without any opportunity to be heard or challenge the Fees in any way.

65. The City is unlawfully charging and collecting Fees.

66. The City deprives Plaintiff, and those similarly situated, of any pre-deprivation or post-deprivation procedures related to the charging of the Fees. More specifically, the City issues its Fees to Plaintiff in the form of an unchallengeable invoice; there is no hearing or possibility of appeal of the

Fees, and if Plaintiff fails to pay the Fees they are placed as a lien on his Property thereby depriving Plaintiff of his money and potentially the property as a whole.

67. There is otherwise no lawful mechanism by which Plaintiff is afforded a hearing at any time to challenge the propriety of the City's conduct, let alone the Fees charged.

68. The City of Garden City violates the rights of Plaintiff and others similarly situated by charging Fees that are hundreds and thousands of dollars greater than the expense paid by the City; as a result Plaintiff has incurred damages. Left unchecked, the City will continue to charge Fees in violation of the due process rights of Plaintiff and others similarly situated.

69. The City of Garden City further violates the rights of Plaintiff and others similarly situated by charging Fees without providing proper notices as required by the Weeds and/or Nuisance Ordinances; as a result Plaintiff has incurred damages.

70. The City of Garden City further violates the rights of Plaintiff and others similarly situated by charging the Fees without first obtaining approval from City council; as a result Plaintiff has incurred damages.

71. The City's conduct as set forth herein fails to meet even the lowest bar of constitutionality and violates Plaintiff's substantive and procedural due-

process rights.

## COUNT TWO
## VIOLATION OF THE EIGHTH AMENDMENT

72. Plaintiffs incorporate the preceding paragraphs.

73. The Eighth Amendment to the United States Constitution precludes excessive fines. The United States Supreme Court has applied the Eighth Amendment equally to civil and criminal proceedings.

74. The Eighth Amendment limits the Government's ability to extract payments as punishment for some offense. See generally *Austin v United States*, 509 US 602 (1993).

75. As set forth above the City has and continues to charge Plaintiff IRS, and those similarly situated, Fees that are not rationally related to the expenses incurred by the City.

76. The Fees likewise exceed the amounts authorized by the City's own ordinances.

77. The Fees likewise greatly exceed the expenses incurred by the City to remediate any alleged violation.

78. These Fees are charged/levied unlawfully.

79. Any fine that is unlawful is, by its very nature, an "excessive fine" and should be afforded the protections of the Eighth Amendment.

80. Plaintiff, and those similarly situated have been damaged by paying such excessive fines and/or having such excessive fines placed as liens on their properties.

## COUNT THREE
## VIOLATION OF DUE PROCESS
### (*failure to provide notice*)

81. Plaintiffs incorporate by reference the preceding paragraphs.

82. As more fully set forth above, Plaintiffs have a constitutional right to not have their money taken from them without due process of law.

83. The IPMC is intended to provide an owner of real property with the minimum due process recognized by the United States constitution. It is so vital to the constitutional application of the IPMC that the IPMC itself recognizes this reality.

84. The IPMC requires that the homeowner be provided with a notice of deficiencies and reasonable time to make repairs or improvements in order to comply with the applicable code and obtain a certificate of compliance.

85. As more fully set forth above, Defendant fails to provide notice of alleged violations of the Weeds and Nuisance Ordinances.

86. Defendant's failure to provide notices in conformity with their own ordinances deprives Plaintiffs of their right to due process, especially where such notices are intended to permit the owner of the real property to cure the

alleged defect before enforcement action is taken by the City.

87. Defendant's unconstitutional lack of notices related to the Weeds and Nuisance Ordinances violates Plaintiffs' rights to due process and Plaintiffs have been damaged by same.

## COUNT FOUR
## VIOLATION OF DUE PROCESS / UNCONSTITUTIONAL CONDITIONS DOCTRINE
### *(Forcing Plaintiff to Forfeit their Constitutional Rights in order to Rent Property)*

88. Plaintiffs incorporate the preceding paragraphs.

89. The Fifth and Fourteenth Amendments to the U.S. Constitution make it unconstitutional to deprive a person of their property without due process of law and just compensation.

90. Plaintiff Safevest has a protected property interest in renting property for financial gain.

91. Plaintiff Safevest also has a right under the Fourth Amendment against unreasonable searches and seizures and the Amendment only permits searches based on probable cause and the issuance of a warrant (or some warrant exception).

92. Plaintiff has a reasonable expectation of privacy in its Property.

93. As adopted by the City, the Rental Ordinances authorize Code Officials unlimited, mandatory warrantless searches of real property in the City for

the purpose of inspection. In that regard the Code provides for their right of inspection without setting forth any warrant procedures and/or providing for any pre-compliance review in violation of the Fourth Amendment and long-standing legal precedent (See *Camera v. Municipal Court* and *City of Los Angeles v Patel*).

94. Where an inspection is not performed for any reason, the City does not secure a warrant, but instead coerces property managers or property owners into consenting to entry and a search under the threat of criminal charges, court action, fines, penalties, liens, and/or refusal to issue registration certificates.

95. Under the Rental Ordinances there is no ability for an owner to object to the building official's entry and inspection into the owner's property and there is no mechanism creating constitutionally required administrative search warrant standards in place for a building official to obtain an appropriate search warrant if an owner of property were to try to object to such entry.

96. As a result, Plaintiff Safevest, and every other owner of real property in the City, is deprived of their right against warrantless searches and otherwise must pay inspection fees, fines, and penalties in order to gain compliance or face the unconstitutional alternative of being deprived of their rights.

97. In the event Plaintiff Safevest or those others similarly situated exercise their

right to be free from a warrantless search they are deprived of their right to lawfully rent property in the City or they are punished by the issuance of criminal charges for such refusal.

98. The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

99. A state actor cannot constitutionally condition the receipt of a benefit, such as a sale or occupancy permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[1]

100. The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[2]

101. The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine,

---

[1]     *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . .").

[2]     *Regan v. Taxation With Representation of Wash.,* 461 U.S. 540, 545 (1983). See also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.,* 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann,* 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[3]

102.     The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[4]

103.     Accordingly, the Rental Ordinances adopted by the City are unconstitutional and unenforceable on their face and their application to Plaintiff and others has resulted in numerous violations of their rights.

104.     As set forth above the City conducted an unconstitutional registration and inspection scheme and has wrongfully collected potentially millions of dollars in ill-gotten registration and inspection fees.

105.     The City's conduct as described herein coerces Plaintiffs, and those similarly situated, to give up their constitutional right to be free from unreasonable searches and seizures.

106.     The City's conduct as described herein violates the Unconstitutional Conditions Doctrine and subjects the City to penalties for same, including but not limited to the reimbursement of registration and inspection fees unlawfully obtained.

---

[3]       *Koontz v St. Johns River Water Management Dist.*, 133 S.Ct. 2586, at 2594 (2013).
[4]       *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").

## <u>COUNT FIVE</u>
## VIOLATION OF FOURTH AMENDMENT
### *(Warrantless Searches)*

107.    Plaintiffs incorporate by reference the preceding paragraphs.

108.    The Fourth Amendment to the U.S. Constitution prevents the government from conducting unreasonable searches and provides that warrants, based on probable cause, are required before searching a house.

109.    The adoption of the Rental Ordinances constitutes the City's express policy and practice of entering real properties without first satisfying the dictates of the Fourth Amendment and thus, on its face, the Inspection Ordinances are patently unconstitutional on their face and should be struck in their entirety.

110.    Alternatively, the City has a policy and practice of punishing Plaintiffs and those similarly situated who fail to permit an inspection of their real property for any reason by threatening court action against Plaintiff and those similarly situated instead of seeking a proper administrative search warrant. As applied, this practice violates the 4th Amendment of the U.S. Constitution.

111.    The City's policy and practice is that if an inspection is refused for any reason the owner of the property is punished for failure to permit the inspection.

112.    Under the guise of the City's unconstitutional inspection requirements the City has collected potentially millions of dollars in unlawful registration and inspection fees.

113.    Plaintiffs have had its right to be free from unreasonable searches and seizures violated and has been harmed as a result.

114.    Plaintiffs and those similarly situated are denied their constitutional right to the use and income generated from their real property if they fail to permit the City's warrantless searches and as such have been damaged.

## COUNT SIX
## DECLARATORY JUDGMENT INVALIDATING LIENS & INJUNCTIVE RELIEF

115.    Plaintiffs incorporate the preceding paragraphs.

116.    An actual controversy exists between Plaintiffs and the City regarding the City's unlawful Grass Fees and liens.

117.    As set forth above, the City has the ability to place a lien on Plaintiffs' Property for failing to pay the Fees. The lien is in the form of the Fees being placed on the tax rolls as a special assessment.

118.    As the liens are based on unlawful fees as further set forth in this Complaint above, such liens should be declared invalid and removed.

## COUNT SEVEN
## VIOLATION OF 42 USC 1983

119.    Plaintiffs incorporate the preceding paragraphs.

120.     Plaintiffs and the class of those similarly situated have a constitutional

right to challenge the City's unlawful Ordinances and the constitutional

rights violated therein.

121.     As set forth above Defendants then proceeded to prosecute and collect

fines and fees from Plaintiffs, and those similarly situated, in violation of

their constitutional rights.

122.     The City has deprived homeowners within its City of property and

rights related thereto and is liable to the Plaintiff and those similarly situated

pursuant to 42 USC 1983.

123.     Pursuant to 42 USC 1988, in any action or proceeding to enforce

Section 1983 the Court, in its discretion, may allow the prevailing party a

reasonable attorney fee as part of the costs.

## IV.    CLASS ALLEGATIONS

124.     Plaintiffs incorporate the preceding paragraphs.

125.     Plaintiffs and putative class members have suffered and continue to

suffer similar harm due to having their property taken by the City without

minimum due process and, as otherwise set forth above, unlawfully. After

not receiving adequate notice or a meaningful opportunity to be heard, the

Plaintiffs and class members are then faced with multiplying levies for

failure to pay improperly charged/levied Fees.

126.     <u>Class Definition.</u> Plaintiffs seeks to certify the following class

   A) All persons and entities who have been charged/levied any amounts by the City under their Weeds Ordinances or Nuisance Ordinances from January 21, 2013 through final judgment in this matter, or such longer period as may be allowed by law; AND

   B) All persons and entities that paid any registration or inspection fees to the City of Garden City at any time from January 21, 2013 through the date of final judgment under the City's Rental Ordinances.

127.     <u>Numerosity.</u>  The proposed classes are so numerous that joinder of all members is impracticable.  While the exact number of class members is not now known, Plaintiff believes the class number is in excess of 250 members. These members may be readily identified from Defendant's own records.

128.     <u>Commonality.</u> There are questions of law or fact common to the members of the class that predominate over questions affecting only individual members.

129.     Among the questions of law or fact common to the class are the following:

   a)     Did the City deprive Plaintiffs of any pre-deprivation or post-deprivation due process rights to challenge the Grass Fees charged by the City?

   b)     Did the City unlawfully charge/assess Grass Fees to Plaintiff and those similarly situated?

c)     Are the Grass Fees charged by the City really taxes in disguise?

d)     Does the City's charging of the Grass Fees violate the Headlee Amendment?

e)     Does the City's charging of the Grass Fees violate equal protection?

f)     Does the City's charging of the Grass Fees violate Michigan law and its own ordinance that restricts the fee to $25.00?

g)     Does the City's Rental Ordinances facially permit unconstitutional warrantless searches?

h)     Does the City's Rental Ordinances, as applied, violate the 4th Amendment of the U.S. Constitution?

i)     Does the City's Rental Ordinances violate the unconstitutional conditions doctrine?

130.     <u>Typicality.</u>  The harm suffered by Plaintiffs is typical of the harm suffered by other class members differing only in amount.  Accordingly, the claims of Plaintiffs are the same as those of the other class members. Resolution of these common questions will determine the liability of the Defendant to Plaintiffs and the class members in general.  Thus, the claims properly form the basis for class treatment in this case.

131.     Although the amount of damages between individual class members may vary, the underlying liability issues remain the same as between all

members of the class and the Defendant.

132.     <u>Adequacy of Representation.</u>   The represented parties will fairly and adequately assert and protect the interest of the class.  Plaintiffs have already demonstrated their willingness to pursue this litigation on their own behalf, and have no known conflicts with the class members.

133.     Plaintiffs' co-counsel will also fairly and adequately represent the interest of the class.  Attorney Mark K. Wasvary and Aaron D. Cox are well versed in the facts and substantive law underlying the Plaintiffs' claims and has previously been certified to represent a class in multiple lawsuits involving the IPMC and other Constitutional issues.[5]

134.     This class action is maintainable under Federal Rule of Civil Procedure 23(b).

135.     The maintenance of this action as a class action will be superior to

---

[5] Mark K. Wasvary has been certified as class counsel in the following lawsuits in the United States District Court for the Eastern District of Michigan: *Village Center Associates, et.al. v City of Detroit*, USDC Case No. 07-12963, *Lola Valley Terrace Association v Charter Township of Redford*, USDC Case No. 09-11238, *Lanson Development Company LLC v City of Dearborn*, USDC Case No. 09-13956, *Eghigian v Fifth Third Bank*, USDC Case No. 07-14406, *Garner, et.al. v City of Roseville, et.al*, USDC Case No. 16-10760, *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 16-14100, *Garner v City of Taylor*, USDC Case No. 16-cv-13374, *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392. Mark K. Wasvary has also been certified in the Wayne County Circuit Court in the matter of *Woodside Square Limited Partnership v City of Romulus*, Case No. 09-019233-CZ and the Oakland Circuit Court in the matter of *Kelly, et.al. v Birmingham Public Schools,* Case No. 12-130333-CZ. Aaron D. Cox has been certified as class counsel in the following lawsuits: *Garner Properties & Management, LLC v Township of Redford*, USDC Case No. 15-14100, *Garner, et.al. v City of Roseville*, USDC Case No. 16-10760, *Garner v City of Taylor*, USDC Case No. 16-cv-13374 and *NILI 2011, et.al. v City of Warren*, USDC Case No. 15-13392.

other available methods of adjudication in promoting the convenient administration of justice.

a)   The prosecution of separate actions by or against individual members of the class could create a risk of inconsistent or varying adjudications with respect to individual members of the class that would confront the party opposing the class with incompatible standards of conduct; and/or

b)   The prosecution of separate actions by or against individual members of the class would create a risk of adjudications with respect to individual members of the class that would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

136.   The party opposing the class has acted or refuses to act on grounds that apply generally to the class, so that final equitable, injunctive or corresponding declaratory and monetary relief is appropriate respecting the class as a whole.   Specifically, Defendant has and continues to deprive homeowners of their right to due process to challenge the Grass Fees; Defendant has and continues to unlawfully charge/assess the Grass Fees to property owners; and Defendant continues to enforce its unconstitutional

Rental Ordinance and collect fees under same.

137.     The questions of law or fact common to class members predominate over any questions affecting only individual members, and as such a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

138.     The action is and will be manageable as a class action and in fact more manageable than the prosecution of separate actions in various forums and venues.

139.     In view of the complexity and importance of the constitutional issues and expense of the litigation, the separate claims of individual class members are insufficient in amount to support separate actions.

140.     It is probable that the amount which may be recovered for individual class members will be large enough in relation to the expense and effort of administering the action to justify a class action.

141.     Plaintiffs are not aware of any members of the proposed class that have filed similar litigation nor are Plaintiffs aware of any pending similar litigation in which the City is a Defendant.

142.     The class action is the appropriate method for the fair and efficient adjudication of the controversy.   The legal and factual bases for the Plaintiff's claims are the same as for the claims of all class members.   The

only difference between individual claims is the severity of the harm and resulting damages. Adjudicating this case on a class-wide basis will promote substantial judicial economy by eliminating the likelihood of multiple cases (perhaps thousands) turning on the same questions of law and fact. The class action will also provide the Plaintiffs with the only meaningful avenue for relief, due to the economy of spreading its litigation costs, thereby reducing each individual's expenses over the class and enabling counsel to pursue the litigation by aggregating the claims. Further, the class action will save the Defendant the burden of defending multiple suits in multiple forums.

## VIII.  RELIEF REQUESTED

WHEREFORE, on behalf of himself and others similarly situated, Plaintiffs, requests the following relief:

A.    That this action be determined as proper to be maintained as a class action pursuant to Federal Rules of Civil Procedure 23(b), together with an order appointing the named Plaintiff to represent the class and certifying Plaintiff's counsel to represent the class;

B.    The declaratory relief as applicable and specified above;

C.    An award of damages, including all applicable interest, in an amount to be determined at trial;

D.      An award of costs of this suit, including reasonable attorney's fees, as provided by 42 USC § 1988, 42 USC §1983 or on other grounds;

E.      An award of an incentive fee to the named Plaintiffs for having the courage to come forward and challenge the City's ordinances and the manner in which they are administered;

F.      Punitive damages for the City's unconstitutional conduct; and/or AND/OR

G.      Any other relief as necessary to redress the violation of Plaintiffs' rights secured by the Constitution and laws.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury on all claims and issues so triable.

Respectfully submitted by:

THE LAW OFFICES OF AARON D. COX,
PLLC
Co-Counsel for Plaintiffs
23380 Goddard Rd.
Taylor, MI 48180
734-287-3664

<u>/s/ Aaron D. Cox, Esq.</u>
By: Aaron D. Cox (P69346)
aaron@aaroncoxlaw.com

MARK K. WASVARY, P.C.
Co-Counsel for Plaintiffs
2401 W. Big Beaver Rd., Suite 100
Troy, MI 48084
(248) 649-5667

/s/ Mark K. Wasvary
By: Mark K. Wasvary (P51575)
mark@wasvarylaw.com

### **Certificate of Service**

The undersigned attorney states that on the date set forth in the ECF system, he caused to be served a copy of this document on the attorneys of record by email.

Respectfully Submitted

Dated: April 5, 2019                   **/S/ Aaron D. Cox, Esq.**
THE LAW OFFICES OF AARON D. COX, PLLC
Aaron D. Cox (P69346)
Co-Counsel for Plaintiff