UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Investment Realty Services, LLC, *et al.*,

       Plaintiffs,

v.                               Case No. 19-10198

City of Garden City,              Sean F. Cox
                                     United States District Court Judge

       Defendant.

_____/

## OPINION & ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

      Acting through counsel, two named Plaintiffs filed this putative class action challenging

the constitutionality of Defendant Garden City's Weed and Nuisance Ordinance and its Rental

Ordinance. The matter is currently before the Court on the City's Motion to Dismiss, brought

under Fed. R. Civ. P. 12(b)(1) and (c). The motion has been fully briefed by the parties and the

Court concludes that oral argument would not aid the decisional process. Thus, the Court orders

that the motion shall be decided without a hearing. As explained below, the Court shall GRANT

the motion because the two named Plaintiffs have failed to meet their burden of establishing that

they have standing to bring the substantive claims they assert in this action. In addition, the

remaining counts, that do not assert separate substantive claims, shall also be dismissed.

## BACKGROUND

      Acting through counsel, Plaintiffs Investment Realty Services, LLC ("IRS") and Safevest

Oakland Acquisitions, LLC ("Safevest") filed this putative class action against Defendant the

City of Garden City ("the City") on January 21, 2019, based on federal question jurisdiction.

The original complaint included multiple state-law claims, along with the federal claims, and asked this Court to exercise supplemental jurisdiction over them. This Court declined to do so and dismissed the state-law claims without prejudice.

The Scheduling Order in this case provides that: 1) amendment to pleadings had to be made by April 25, 2019; 2) motions to dismiss had to be filed by June 7, 2019; 3) class certification discovery is to be completed by July 26, 2019; and 4) a class certification motion is to be filed by August 26, 2019.

Plaintiffs' Amended Complaint, filed on April 8, 2019, is now the operative complaint in this case. It asserts the following seven counts: 1) "Violation of Due Process" (Count One), asserted on behalf of IRS; 2) "Violation of the Eighth Amendment" (Count Two), asserted on behalf of IRS; 3) "Violation of Due Process (failure to provide notice)" (Count Three), asserted on behalf of IRS; 4) "Violation of Due Process / Unconstitutional Conditions Doctrine (Forcing Plaintiff to Forfeit their Constitutional Rights in order to Rent Property)" (Count Four), asserted on behalf of Safevest; 5) "Violation of Fourth Amendment (Warrantless Searches)" (Count Five), asserted on behalf of Safevest; 6) "Declaratory Judgment Invalidating Liens & Injunctive Relief" (Count Six), asserted on behalf of IRS; and 7) "Violation of 42 USC 1983" (Count Seven), asserted on behalf of both IRS and Safevest. The Amended Complaint asks this Court to certify the following class:

126. <u>Class Definition</u>. Plaintiffs seek to certify the following class

A) All persons and entities who have been charged/levied any amounts by the City under their Weeds Ordinances or Nuisance Ordinances from January 21, 2013 through final judgment in this matter, or such longer period as may be allowed by law; AND

B) All persons and entities that paid any registration or inspection fees

2

to the City of Garden City at any time from January 21, 2013 through the date of final judgment under the City Rental Ordinances.

(Am. Compl. at ¶ 126).

On June 7, 2019, the City filed a "Motion To Dismiss Pursuant To Fed. R. Civ. P. 12(b)(1) And/Or For Judgment On The Pleadings Pursuant To Fed. R. Civ. P. 12(c)" (ECF No. 13).

## ANALYSIS

The City brings the instant Motion to Dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(c). The City's standing challenges are brought under Fed. R. Civ. P. 12(b)(1) and its remaining challenges are asserted as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).

## I.     The City's Standing Challenges

That portion of the City's Motion to Dismiss that challenges the standing of the named Plaintiffs to bring the claims asserted in this action is made under Fed. R. Civ. P. 12(b)(1).

A motion to dismiss brought under Fed. R. Civ. P. 12(b)(1) is a challenge to subject matter jurisdiction. "Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994). "A *facial* attack is a challenge to the sufficiency of the pleading itself." *Id.* (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction." *Id.* (emphasis in original).

Here, the City's motion clearly states that the City is making a factual attack to subject matter jurisdiction. (*See* Def.'s Br. at 6). ("This motion presents a factual attack.").

"On such a motion, no presumptive truthfulness applies to the factual allegations" and this Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Ritchie*, 15 F.3d at 598. "[W]hen a defendant produces evidence challenging the existence of standing, a plaintiff must generally prove standing with evidence, even at the motion-to-dismiss stage." *Harris v. Lexington-Fayette Urban Cnty. Govt.*, 685 F. App'x 470, 472 (6th Cir. 2017). And it is well established that the plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016).

Accordingly, "[t]o defeat a factual attack, a plaintiff 'must prove the existence of subject-matter-jurisdiction by a preponderance of the evidence" and is "obliged to submit facts through some evidentiary method to sustain his burden of proof.'" *Superior MRI Svs., Inc. v. Alliance Healthcare Svs., Inc.*, 778 F.3d 502, 504 (6th Cir. 2015) (citations omitted).

### A.     Claims Asserted By Safevest

Safevest is the sole named Plaintiff that asserts the claims that pertain to the City's Rental Ordinance (Counts Four, Five, and part of Count Seven, of the Amended Complaint).

Count Five of the Amended Complaint alleges a violation of the Fourth Amendment of the United States Constitution, specifically that the Rental Ordinance is unconstitutional on its face and as-applied based on Safevest's allegation that the ordinances authorize warrantless searches.

Count Four alleges that the Rental Ordinance violates the Fifth and Fourth Amendments of the United States Constitution, and specifically the unconstitutional conditions doctrine, by conditioning the sale or rental of a property on property owners' consent to relinquish their

Fourth Amendment protection against warrantless searches. This claim is derivative of Count V in that Plaintiffs assert that by conditioning a rental certificate on an owner's agreement to refrain from exercising his or her constitutional right to be free from unlimited warrantless searches, the City has violated the unconstitutional conditions doctrine.

Count Seven is also asserted by Safevest. In that count, Safevest seeks to bring a claim under § 1983 but does not raise any substantive claim, other than those asserted in Counts Four and Five.

The City's motion asserts that Safevest lacks standing to bring all of those claims.

## 1. Relevant Facts As To Rental Ordinance And Safevest

The City has adopted the International Property Maintenance Code ("IPMC") in Section 151.01 of the City's codes and ordinances. (Pls.' Ex. B).

The City's local ordinances include a chapter that governs "Inspection of Rental Dwellings," Chapter 153. (Pls.' Ex. A). The Court will refer to this chapter as the "Rental Ordinance" as Plaintiffs do in the Amended Complaint.

The City's Rental Ordinance requires owners of rental dwellings in the City to register each rental dwelling:

> § 153.02 Registration For Rental Or Lease Of Dwellings.
>
> (A) It shall be unlawful for an owner to rent or lease a dwelling unless a registration certificate has been issued and maintained for the dwelling in the manner required by this subchapter.
>
> (B) Any person who violates this section shall be responsible for a municipal civil infraction and subject to the civil fines set forth in § 41.06.

(*Id*. at 2-3). The City's Rental Ordinance requires the submission of an application for registration of such dwellings and requires that the "application shall be accompanied by a

registration fee in such amount as City Council shall from time to time establish by resolution."

(*Id*. at 3). It further provides that an inspection of the dwelling is required for registration and

for the issuance of a registration certificate as follows:

§ 153.04 Inspection Required For Registration.

The owner of the dwelling identified in the application *shall make the dwelling available for inspection by the department* as may be necessary for the department to determine whether the dwelling complies with the International Property Maintenance Code, the state building code, the state residential code, the state electrical code, the state mechanical code, the state plumbing code, the state uniform energy code, the state elevator code, the state housing law, and the city's zoning code, as amended.

§ 153.05 Issuance Of Registration Certificate.

After receiving the application and fee for registration, the department shall inspect the dwelling applying the standards set forth in the above-stated codes, housing law, and zoning code. Upon determining that the dwelling is in compliance, the department shall issue to the applicant a registration certificate, which shall be valid for three calendar years. The registration certificate shall be in the name of the owner and cannot be transferred.

(*Id*. at 3) (emphasis added).

The IPMC, which has been adopted by the City, provides as follows regarding entries

for inspections:

104.3 Right of entry. Where it is necessary to make an inspection to enforce the provisions of this code, or whenever the code official has reasonable cause to believe that there exists in a structure or upon a premises a condition in violation of this code, the code official is authorized to enter the structure or premises at reasonable times to inspect or perform the duties imposed by this code, provided that if such structure or premises is occupied the code official shall present credentials to the occupant and **request entry**. If structure or premises is unoccupied, the code official shall first make a reasonable effort to locate the owner, owner's authorized agent or other person having charge or control of the structure or premises and **request entry**. **If entry is refused, the code official shall have recourse to the remedies provided by law to secure entry.**

(*See* IPMC § 104.3, in Pls.' Ex. C) (bolding added for emphasis).

If, after an inspection, the City finds that the property complies with the codes, the City issues a registration certificate that is valid for three calendar years. (§ 153.05). On the other hand, if the City finds that the property is not in compliance with the codes and denies the application (or suspends or revokes a certificate), the ordinance provides the owner the right to appeal the denial of the certificate to the Zoning Board of Appeals. (§ 153.07).

On or about September 5, 2018, Safevest submitted an application for registration of a rental dwelling to the City for a property located at 5918 Cardwell. (First Am. Compl. at ¶ 48; Def.'s Ex. 13). Safevest paid a $200.00 fee along with its application. (First Am. Compl. at ¶ 49; Def.'s Ex. 13).

It is undisputed that on or about October 15, 2018, a code official from the City "entered Safevest's property at 5918 Cardwell" and "conducted an inspection" of the property in connection with Safevest's application. (First Am. Compl. at ¶ 50; Def.'s Ex. 14).

Plaintiffs' First Amended Complaint does not include any further factual allegations regarding the circumstances surrounding the inspection of Safevest's property. For example, it does not allege that Safevest's representative or tenant refused entry to the code official who came to inspect the property. It also does not allege that Safevest has ever been fined or prosecuted in connection with its application or the Cardwell property.


## 2. Analysis As To Safevest's Standing

"Article III standing requires the claimant to establish three things: (1) a concrete and particularized injury, actual or imminent, (2) traceable to the defendant, and (3) proof that a

favorable outcome would redress the harm." *Vonderhaar v. Village of Evendale, Ohio*, 906 F.3d 397, 401 (6th Cir. 2018).

"The party that invokes federal jurisdiction must establish its standing at every stage of the litigation." *Id.* "When litigants present multiple claims" in a case, as Plaintiffs[1] do here, "they must show injury for each claim they press." *Id.*

Here, the City asserts that Safevest lacks standing to bring its claims because: 1) it has not suffered an injury-in-fact; and 2) its alleged harm is not redressable. This Court need not proceed past the first standing argument presented in the motion.

The City contends that, like the plaintiffs in *Vonderhaar*, Safevest lacks standing. It notes that in *Vonderhaar*, "the Sixth Circuit dismissed a facial and as-applied Fourth Amendment challenge to a rental property ordinance for lack of standing due to lack of an actual or imminent injury under facts virtually identical to those present in this case." (Def.'s Br. at 8).

In *Vonderhaar*, property owners filed suit against the Village of Evendale, alleging that its rental ordinance violated the Fourth Amendment to the United States Constitution by authorizing warrantless searches. The village's building code requires property owners who want to rent their properties to obtain a permit. The ordinance at issue in that case provided that: 1) "[i]f the building is occupied at the time of inspection, the commissioner must 'present

---

[1]In addition, "Plaintiffs are not absolved of their individual obligation to satisfy the injury element of Article III just because they allege class claims." *Soehnlen v. Fleet Owners Ins. Fund,* 844 F.3d 576, 582 (6th Cir. 2016). "Threshold individual standing is a prerequisite for all actions, including class actions." *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998). The Sixth Circuit "has made clear that potential class representatives must demonstrate 'individual standing vis-a-vis the defendant; [they] cannot acquire such standing merely by virtue of bringing a class action.'" *Id*. (quoting *Fallick, supra).*

credentials to the occupant and request entry'; 2) "[f]or unoccupied structures, the commissioner must 'make a reasonable effort to locate the owner' or the person who controls the property and ask to inspect"; and 3) "[s]hould someone refuse entry in either circumstance, the commissioner may use 'the remedies provided by law to secure entry.'" *Id*. at 400.

The district court rejected the plaintiffs' as-applied Fourth Amendment challenge because the village did not search any of their properties. But the district court "granted a preliminary injunction, concluding that the building code's inspection procedures facially violate the Fourth Amendment." *Id.* The village appealed and the Sixth Circuit vacated the preliminary injunction, concluding that the plaintiff lacked standing as to the facial challenge too.

The Court explained that "[a]t issue today is the first [standing] requirement, an actual or imminent injury. In recent years, the Supreme Court has tightened the hatches on this requirement. Claimants cannot file a lawsuit based on a 'highly speculative fear' that a law may harm them at some future date. *Clapper*, 568 U.S. at 410, 133 S.Ct. 1138. Their injury instead must be 'certainly impending.' *Id*. An allegation 'of *possible* future injury' is not enough." *Vonderhaar*, 906 F.3d at 401 (emphasis in original). The Sixth Circuit concluded the two plaintiffs "have not suffered an actual injury and do not have a 'certainly impending' risk that the Village of Evendale will conduct warrantless search of one of their properties." *Id*.

Notably, it started by looking at the language of the code itself. "It permits a building commissioner only 'to secure entry' to a structure with 'the remedies provided by law.' R. 1-3 at 24. Because the Fourth Amendment prohibits a warrantless search, it is not a 'remed[y] provided by law.'" *Id.*

It then noted that the village had submitted an affidavit from its commissioner that

bolstered the village's assertion that it had no plans to violate the Fourth Amendment, indicating

that if he was refused entry to a property, he would ask the village solicitor to start the process to

obtain an administrative search warrant to gain entry to the property in question. The court

further noted that the village "has no history of prior illegal searches – against [the plaintiffs] or

any other property owner." *Id.* Finally, it noted that the village, in "[a]ttempting to remove all

doubt," had amended its code to expressly mention the warrant requirement by name. *Id.*

Based on the record presented, the Sixth Circuit concluded the plaintiffs lacked standing

to mount either an as-applied or a facial Fourth Amendment challenge to the village's ordinance:

> All of this explains why the district found – correctly – that the property owners
> could not mount an as-applied Fourth Amendment challenge to the building code.
> Neither Vonderhaar nor Lemen has suffered an actual injury. That same lack of
> harm and the same lack of risk of harm – past, present, or future – also bars them
> from bringing a facial Fourth Amendment challenge.

*Id.* at 401-02.

The Court rejected all the plaintiffs' counter-arguments, finding that "[e]ach falls short,"

including the following:

> Vonderhaar claims standing on the ground that the Village fined him for failing to
> file his permit applications on time – retaliation (he says) for publicly advocating
> against the building code and bringing this lawsuit. True or not, that injury would
> provide Vonderhaar standing only to allege a violation of his free speech or due
> process rights, not his Fourth Amendment rights. That the building commissioner
> has "conducted numerous inspections of properties" likewise does not provide
> evidence of a risk of future constitutional harm. Appellee's Supp. Br. 8. What
> matters is whether the commissioner has conducted a *warrantless inspection in
> violation of the Fourth Amendment* (he has not) or whether he is likely to do so in
> the future (he is not).

> Vonderhaar and Lemen claim that their tenants fear that they will be victims of a
> warrantless search. But, *on this record, a tenant's fear of an unconstitutional
> search is just as speculative as Vonderhaar's and Lemen's fears. Neither one
> permits a pre-enforcement action.*

. . . .

> *City of Los Angeles v. Patel* does not save the claim either. *Patel* invalidated a
> law the required hotel owners to turn over records to the police without a warrant.
> 135 S.Ct. at 2448, 2451. But the hotel owners in *Patel* had "been subjected to
> mandatory record inspections under the ordinance *without consent or a warrant*."
> *Id.* at 2448. That by itself distinguishes that case from this one and perhaps
> explains why *Patel* never addressed Article III standing.

*Id*. at 402 (italics added for emphasis).

Under *Vonderhaar,* as to standing, "what matters" is whether the defendant has

conducted an inspection of a property under its rental ordinance in violation of the Fourth

Amendment, which means without either consent or a warrant, or whether there is a certainly

impending risk that the defendant will do so.

Again, it is Safevest's burden to establish its standing to bring its claims in this case.

To defeat the City's factual attack to subject matter jurisdiction, Safevest must "prove the

existence of subject-matter-jurisdiction by a preponderance of the evidence" and is "obliged to

submit facts through some evidentiary method to sustain [its] burden of proof.'" *Superior MRI*

*Svs., Inc.,* 778 F.3d at 504. Safevest has failed to meet that burden.

Like the ordinance at issue in *Vonderhaar*, the City's Rental Ordinance provides that: 1)

if the "structure or premises is occupied the code official shall present credentials to the occupant

and request entry," 2) if the "structure or premises is unoccupied, the code official shall first

make a reasonable effort to locate the owner, owner's authorized agent or other person having

charge or control of the structure or premises and request entry," and 3) "If entry is refused, the

code official shall have recourse to the remedies provided by law to secure entry." (IMPC §

104.3, adopted by the City). Thus, as in *Vonderhaar*, the City's Rental Ordinance permits a code

official only to "secure entry" to a property "with the remedies provided by law." Because the

Fourth Amendment prohibits a warrantless search, it is not a remedy provided by law. *Vonderhaar, supra.*

As to standing, "what matters" is whether the City has conducted an inspection of Safevest's property under its Rental Ordinance in violation of the Fourth Amendment, which means without either consent or a warrant, or whether there is a certainly impending risk that the City will do so.

In the Amended Complaint, Safevest merely alleges that it submitted an application for registration of its property on Cardwell and that, on or about October 15, 2018, a code official from the City "entered Safevest's property at 5918 Cardwell" and "conducted an inspection" of that property. Notably, the Amended Complaint does not include any further factual allegations regarding the circumstances surrounding the inspection – such as whether Safevest's representative or tenant[2] *refused entry* to the code official or whether they *consented to* the code official entering the property. Then, in response to this pending motion, Safevest has not submitted any affidavits from its representatives or tenants as to such facts.

Indeed, in response to the City's motion, Safevest has not presented any evidence to indicate that the City has *ever* conducted an inspection under its Rental Ordinance in a manner that violates the Fourth Amendment (absent either consent or a warrant). It has also failed to present any evidence that the City is likely to do so in the future.

---

[2]The City's motion indicates it does not know if the Cardwell property was leased to a tenant at the time of the inspection and notes that, if it was, there is also an argument that Safevest would lack standing to challenge any search of the leased property. (*See* Def.'s Br. at 10 n.3)(arguing under *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544-45 (6th Cir. 2003) that Safevest would lack standing because it would have no reasonable expectation of privacy as to a leased property). Although this argument appears to have merit, the Court need not address it.

Safevest also fails to allege, or present any evidence to establish, that it has ever been fined or prosecuted in connection with its application or the Cardwell property.

Accordingly, Safevest lacks standing to challenge the City's Rental Ordinance.

Seeking to avoid this result, Safevest asserts that "*Vonderhaar* is an anomaly" and can be distinguished from this case. *Vonderhaar* is a published opinion from the Sixth Circuit and Plaintiffs do not explain why it should be considered an anomaly. Safevest's efforts to distinguish this case also fail.

First, Safevest asserts this case can be distinguished because in *Vonderhaar*, "Defendant provided a sworn attestation that *in the event of a refusal* it would seek an administrative warrant." (Pls.' Br. at 6) (emphasis added). In this regard, Safevest argues that "Defendant in this matter has provided no affidavit regarding inspections or what procedures *would be taken* to obtain a warrant *should an inspection be refused*." (*Id*. at 7) (Emphasis added). This argument should be rejected because it is Safevest – not the City – who bears the burden of establishing standing. Moreover, although the Sixth Circuit noted the affidavit presented by the village in *Vonderhaar*, because it bolstered the village's assertion that it had no plans to violate the Fourth Amendment in the future, it was not necessary to the court's standing ruling. That is because the village submitted an affidavit stating what it *would do*, in a *hypothetical scenario if* someone in the village *were to* refuse entry to a property for an inspection in the future. It is well established that federal courts may not issue advisory opinions based upon hypothetical facts. *See, eg., Commodities Export Co. v. Detroit Intern. Bridge Co.*, 695 F.3d 518, 525 (6th Cir. 2012) (Federal courts "have no power to offer an advisory opinion, based on hypothetical facts."). As such, there is no reason for the City to submit an affidavit stating what it would do if it were

presented with hypothetical facts in the future.

Second, Safevest seeks to distinguish this case because the defendant in that case amended its ordinance to specifically mention the warrant by name. (Pls.' Br. at 6). Again, that action was not necessary to the standing ruling. Indeed, the Sixth Circuit described that action being taken in an attempt "to remove all doubt." It was not necessary given the Sixth Circuit's analysis, that based on the language of the code itself, a warrantless search was not authorized by the code. *Vonderhaar, supra*.

Accordingly, Safevest's arguments are rejected and the Court concludes that Safevest lacks standing to challenge the City's Rental Ordinance, as to both an as-applied and facial challenge.

Because the other substantive count asserted by Safevest (Count Four) appears to be derivative of Count Five, Safevest would also lack standing as to that count. In addition, that count shall also be dismissed for the same reason why it was dismissed in *MS Rental*, as explained below.

### B. Claims Asserted By IRS

IRS is the sole named Plaintiff who asserts the claims that pertain to the City's Weed and Nuisance Ordinance (Counts One, Two, Three, Six, and Seven of the Amended Complaint).

In Count One, IRS alleges that the Weed and Nuisance Ordinance violates due process, because it does not provide an opportunity to challenge a determination that a property is in violation, or the fees associated with abatement of that violation.

Count Two alleges a violation of the Eighth Amendment to the United States Constitution, claiming that fees for grass abatement under the Weed and Nuisance Ordinance are

"excessive fines."

Count Three alleges a second violation of due process with respect to the Weed and Nuisance Ordinance, asserting that the City does not provide proper notice of violations under its own ordinance.

Count Six, seeks declaratory relief, and is asserted by IRS. But it does not appear to assert a substantive claim. Rather, it seeks the remedy of declaratory relief for substantive claims asserted in Counts One, Two, and Three.

Count Seven is also asserted by IRS. In that count, IRS seeks to bring a claim under § 1983 but does not raise any substantive claim other than those asserted in Counts One, Two, or Three.

### 1.    Relevant Facts

Chapter 92 of the City's Code of Ordinances governs "Public Nuisances." (Pls.' Ex. D). Section 92.15 governs "Control And Maintenance Of Grass And Weeds" and declares that it shall be unlawful "for the owner or occupant, or any person having control or management of," any parcel of land in the City to allow the growth of grass and weeds "exceeding a height of seven inches above ground level." (*Id*. at § 92.15(A)(1)). The ordinance provides that it is the "duty of the occupant of every premises and the owner of unoccupied premises" within the City to cut the grass as often as is necessary to keep it under seven inches. (*Id*. at § 92.15(B)).

Chapter 92 further provides that the City will abate a nuisance, after providing notice and an opportunity to abate it:

§ 92.16 Control And Maintenance By City.

If the provisions of § 92.15 are not complied with, the Director of Public Services, or his duly authorized representatives, shall notify the occupant or owner of

unoccupied premises to comply with the provisions within a time to be specified in the notice. The notice shall be given in accordance with § 10.12 of this Code. The notice shall require compliance within five days after services of the notice, and if the notice is not complied with within the time specified within the notice, the Director shall cause the weeds, grass, and other vegetation to be removed or destroyed, together with any grading necessary to allow the removal of the vegetation. The cost of cutting, removal, grading, or destruction shall be charged in accordance with the Comprehensive Fee Schedule in Chapter 12 of this Code. The charge shall become at once a debt to the city from the persons to whom they are assessed, together with all charges thereon, and shall, on July 1, become a lien on the property assessed of the same character and effect as the lien created by general law for state and county taxes, until paid.

(*Id*. at § 92.16). The fee for grass abatement charged by the City is $400.00. (Def.'s Ex. 2).

Section 92.99 provides that any person who violates the Nuisance Ordinance shall be responsible for a civil infraction and subject to a civil fine, that is set forth in § 41.06. (Pls.' Ex. D, § 92.99(A)).

On April 27, 2017, the City posted a written notice at a residential property located at 31625 Balmoral in Garden City, Michigan (the "Balmoral Property"). (Def.'s Ex. 7, ECF No. 15). That notice stated:

As owner/occupant of the property above, you are hereby notified that the undersigned has determined there exists a nuisance within the meaning of the Code of the City of Garden City:

Tall Grass & Weeds.

You are hereby notified to abate said nuisance within five (5) days from the date of the posting. Failure to do so will cause the City to abate and all costs will be charged against you as a special assessment as provided in 1983 Code 92.05.

Department of Public Service
Code Ordinance Officer
A. DiMichele
(734) 793-1807

(*Id*.). The City abated the alleged nuisance, by having the grass cut at the Balmoral Property,

on May 12, 2017.  (Def.'s Ex. 8).

During this time period, April 27, 2017 through May 12, 2017, the Balmoral Property was owned by Christopher Brewer, who is not a party to this case.  (Def.'s Ex. 5).  There is no evidence before the Court as to whether the Balmoral Property was occupied or vacant during that critical time period.

IRS purchased the Balmoral Property from Christopher Brewer on May 17, 2017, after the alleged nuisance had been abated by the City.  (Def.'s Ex. 5; IRS's Reqs. to Admit).  The closing statement for that sale reflects a debit to the seller of $2,000.00 for "Grass Cutting Invoices to City of Garden City."  (Ex. 2 to Def.'s Reply).  It does not list the dates that are associated with those grass-cutting invoices.

IRS owned the Balmoral Property for a very short period of time.  IRS sold the Balmoral Property to Piper 22045, LLC on July 1, 2017.  (*Id.*).  Thus, IRS owned it for less than two months.  Piper 22045, LLC later sold the Balmoral Property to Safevest.  (*Id.*).

The City produced an invoice for a $400.00 abatement fee for the May 12, 2017 grass cutting at the Balmoral Property, that appears to have been issued and sent to Safevest on May 23, 2017, at the Balmoral Property address.  (Def.'s Ex. 8).  That invoice listed an Invoice Number 0001006259 for the May 12, 2017 grass cutting.  (*Id.*).

The City produced a record that appears to reflect that the $400.00 abatement fee for the May 12, 2017 grass cutting (Invoice Number 0001006259) at the Balmoral Property was paid on August 24, 2017, by Safevest.  (Def.'s Ex. 9).  Safevest does not assert any claim in this action regarding the Balmoral Property or the Weed and Nuisance Ordinance.

In response to the City's motion, IRS produced a settlement statement relating to its sale

of the Balmoral Property to Piper 22045, LLC on July 1, 2017. (Pls.' Ex. G.). That settlement statement lists a debit of $400 for "Special Assessment: Nuisance." (*Id.*). It does not explain that debit any further. It has also produced a document from the title company concerning that sale that indicates a check of $400.00 was issued to the City on August 23, 2017. (Pls.' Ex. H). That document references "Special Assessment: Nuisance" but does not explain that any further. (*Id.*).

### 2.     Analysis

The City asserts that IRS lacks standing to raise the three substantive counts that challenge the Weed and Nuisance Ordinance (Counts One, Two, and Three) because it lacks an injury in fact or causation. In support of its motion, the City explains:

> As explained in the statement of facts, Investment lacks an injury in fact. To the extent that it alleges that it did not receive the notice of the abatement, this is readily explained by the fact that Investment did not own the Balmoral Property at the time that notice was issued or the grass was cut. (Ex. 5; Ex. 7; Ex. 8). It also did not incur any damages because it appears that the grass fee was paid by a third party after Investment sold the property. (Ex. 5; Ex. 9). Investment does not allege that it was ever ticketed or fined in relation to the May 2017 nuisance abatement and fee. Thus, the only harm apparently alleged by Investment is that it "was charged $400 for an alleged violation of the nuisance ordinance." (Compl. ¶25). Investment does not allege that it took any action to challenge the fee.
> Further, Investment's characterization is inaccurate, as it was not charged for a "violation" of the nuisance ordinance. Nor was the assessment personal to Investment, but rather an assessment against the property, as evidenced by the Code's provision that such a cost can become a lien on the property. (Ex. 1, Code §92.16). Any harm Investment alleges it incurred from being "charged" for the abatement is not caused by the Nuisance Ordinance, but rather by the fact that Investment purchased the Balmoral Property without performing sufficient due diligence to determine that the property was subject to an unpaid fee, or taking the steps necessary to make the prior owner responsible for any unpaid fees.

(Def.'s Br. 15-16). The City argues that IRS lacks both an injury in fact and a causal link necessary to assert standing for any of its claims in this action. (*Id.*).

In response to the City's standing arguments, IRS's response brief states as follows, *with*

*no further explanation or analysis* as to how IRS has standing to assert the claims in this action:

> B.      Investment Realty's Standing
>
> It is true that Investment Realty Services no longer owns the home, however it did pay the fee. Defendant's argument regarding the timing of the payment by Investment Realty has no bearing on standing. Attached as Ex. G is the Investment Realty's Seller's Closing Statement showing that the $400 fee to the city for nuisance abatement was withheld from money owing to Investment Realty. Attached as Ex. H is the title company's disbursement ledger indicating that the $400 was disbursed to City of Garden City Treasurer on August 23, 2017. This coincides with Defendant's claim that it received payment on August 24, 2017.

(Pls.' Br. at 7-8).

The Court concludes that IRS has failed to meet its burden of establishing its standing, by a preponderance of the evidence.

First, IRS has not presented evidence to establish, by a preponderance of the evidence, that it actually paid the fee that was assessed by the City for the May 12, 2017 abatement of the alleged nuisance at the Balmoral Property. That fee could have been paid by Brewer, as part of the $2,000.00 in grass cutting fees that were withheld from his sales proceeds when he sold the Balmoral Property to IRS. Alternatively, that fee could have been paid by Safevest, as the City's records appear to indicate. It is also possible that the title company paid that fee to the City from the sales proceeds it withheld from IRS when it sold the Balmoral Property to Piper 22045 LLC, although the documents produced by IRS do not contain any identifying information such as the date or invoice number. This vague and seemingly conflicting evidence does not establish, by a preponderance of the evidence, that the $400.00 withheld from IRS's sales proceeds at closing was for this nuisance abatement fee.

Second, even if IRS produced evidence that established that the $400.00 that was

withheld from the sales proceeds was used to pay a lien placed on the property after the prior owner failed to pay the fee for the May 12, 2017 grass cutting, this Court would still conclude that IRS has failed to establish standing to assert its claims in this action.

To determine whether Investment Realty has standing to challenge the constitutionality of the City's Weed and Nuisance Ordinance, the Court "must examine the nature of the injury-in-fact" which it claims. *National Rifle Ass'n of America v. Magaw*, 132 F.3d 272, 280 (6th Cir. 1997). In this regard, the Supreme Court has explained that requires asking, among other things, "[i]s the line of causation between the illegal conduct and the injury too attenuated?" *Id*. (citing *Allen v. Wright*, 468 U.S. 737, 752 (1984)).

Here, IRS owned the Balmoral Property for a very brief window of time (less than two months). No notices of alleged violations of the Weed and Nuisance Ordinance were issued to IRS by the City, or posted on the Balmoral Property, during the time period that it owned it.

Rather, IRS asserts that the *prior owner* of the Balmoral Property was assessed a $400.00 nuisance abatement fee, in connection with the April 27, 2017 notice that was posted on the property and the City having later abated the alleged nuisance on May 12, 2017, by having the grass cut. IRS claims that it has standing to challenge the constitutionality of the City's Weed and Nuisance Ordinance – that was never applied to it during the brief time that it owned the Balmoral Property – because the prior owner's unpaid fee became a lien on the property that was later deducted from IRS's sales proceeds when it sold the property.

The line of causation between the challenged Weed and Nuisance Ordinance and the only injury claimed by Investment Realty is too attenuated to confer standing.

IRS seeks to assert a violation of due process, based upon IRS not having received proper

20

notice of the alleged nuisance, or the opportunity to challenge the City's determination that the property was in violation of the ordinance or the amount charged for the abatement, prior to the City's abatement at the Balmoral Property. IRS lacks standing to bring such claims because it did not own or occupy the property at the time the notice was posted on the property (April 27, 2017), or on the date when the City later abated the alleged nuisance by having the grass cut (May 12, 2017) at the Balmoral Property. The individual or entity that owned or occupied the Balmoral Property on those dates (ie, the party against whom the Nuisance Ordinance was applied) would be the party with standing to assert such claims.

## II. The City's Other Challenges To Plaintiffs Claims, Under Fed. R. Civ. P. 12(c)

The City's motion also challenges Plaintiffs' claims under Fed. R. Civ. P. 12(c). Because the Court agrees that Safevest and IRS lack standing to assert Counts One through Five, then the Court need not reach these additional or alternative grounds for challenging those counts. That said, Count Four appears to be derivative of Count Five, but it also fails for the same reason why it was dismissed in *MS Rental*.

In addition, the Court shall address the City's challenge to the other counts, that do not assert substantive claims on behalf of Safevest or IRS (Counts Six and Seven).

Motions brought under Fed. R. Civ. P. 12(c) are adjudicated under the same standards as those under Rule 12(b)(6). *Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007); *see also Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007) ("[A] complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory.")

Rule 12(b)(6) provides for the dismissal of a case where the complaint fails to state a

claim upon which relief can be granted.  The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true.  *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal conclusions couched as factual allegations will not suffice.  *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## A.    Count Four (Unconstitutional Conditions Doctrine Claim)

The City's motion asserts that, even if Safevest was found to have standing, Count Four of the Amended Complaint should still be dismissed because an unconstitutional conditions claim is not available in conjunction with its Fourth Amendment claim, as was found in *MS Rentals*.  (Def.'s Br. at 16-17).  In support of this argument, the City explains:

> If Safevest is found to have standing, judgment should be entered for the City on the pleadings on its unconstitutional conditions claim (Count IV).  An unconstitutional conditions claim is a variant of a substantive due process claim, which "protects only against state action that is not otherwise proscribed by the plain text of other constitutional amendments." *MS Rentals*, 367 F.Supp.3d at 413-414, citing *Ciminillo v. Streicher*, 434 F.3d 461, 465 (6th Ci. 2006).  Where a plaintiff can assert "an explicit textual source of constitutional protection," a substantive due process claim is not available.  *Id.* at 414, citing *Graham v. Connor*, 490 U.S. 386, 395 (1989) and *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).  The unconstitutional conditions argument only works if the property owner "surrenders cognizable Fourth Amendment rights."  *Benjamin*, 915 F.3d at 1068.  As Count IV is better addressed "in [plaintiffs'] Fourth Amendment claim" the City is entitled to judgment on the pleadings.  *MS Rentals*, 367 F.Supp.3d at 414; Fed. R. Civ. P. 12(c).

(*Id.*).

In their response brief opposing the City's motion, Plaintiffs state "denied as untrue" as to the City's statement of this issue. (*See* ECF No. 17 at PageID.329). But the body of their brief ignores this argument. Plaintiffs do not respond to this argument or attempt to explain how they can proceed with Count Four in light of their assertion of the violation of their Fourth Amendment rights in other counts. As such, Count Four shall be dismissed.

### B.     Counts Six (Declaratory Judgment) And Seven (§ 1983)

The City's motion asserts that it is entitled to judgment on the pleadings in its favor as to Counts Six and Seven because declaratory relief and 42 U.S.C. § 1983 are not substantive causes of action. (Def.'s Br. at 25). It asserts:

> Count VI attempts to raise cause of action for declaratory relief, while Count VII merely restates the constitutional allegations [and] requests costs and attorney fees pursuant to 42 U.S.C. § 1988. Both of these are wholly dependent on the balance of the Complaint's claim, and neither pleads an independent substantive cause of action. *MS Rentals*, 362 F.Supp.3d at 412. The City is entitled to judgment on the pleadings on Counts VI and VII. Fed. R. Civ. P. 12(c).

(*Id.*).

Notably, in their response brief opposing the motion, Plaintiffs do not respond to this argument[3] or attempt to explain how these counts can proceed as independent claims.

In *MS Rentals*, the district court ruled that the counts in the complaint styled as "Injunctive Relief" and "Declaratory Relief" do not state independent claims, but rather, are remedies dependent on the viability of the constitutional claims set forth in other counts of the complaint. *MS Rentals*, 362 F.Supp.3d at 412. It also explained that the count styled as "Violation of 42 U.S.C. § 1983" simply alleged that the plaintiffs are entitled to relief for the

---

[3]Other than to assert, in response to the City's statement of this ground for relief, "denied as untrue." (*See* ECF No. 17 at PageID.331).

alleged constitutional violations in the preceding counts and, as such, "is merely a repetition of those counts" and not an independent claim. *Id*. Thus, the district court dismissed those counts.

The same is true of the Amended Complaint in this action. This Court shall dismiss Counts Six and Seven because they do not assert independent causes of action on behalf of Safevest or IRS.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that the City's Motion to Dismiss is GRANTED.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: August 26, 2019